Filed 3/18/15  P. v. Cerezo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOE L. CEREZO,<br><br>    Defendant and Appellant. | 2d Crim. No. B254016<br>(Super. Ct. No. 2010032139)<br>(Ventura County) |

Joe L. Cerezo appeals conviction by jury of vehicle theft for the benefit of a criminal street gang and street terrorism.  (Veh. Code, § 10851; Pen. Code, § 186.22, subds. (a) & (b)(1).)  The imposition of Cerezo's sentence was suspended.  He was ordered to serve time in county jail and placed on formal probation with a number of terms and conditions.  Cerezo contends his Sixth Amendment right to confrontation was violated when a gang expert relied on testimonial hearsay to prove an element of the street terrorism crime and the gang enhancement.  (Pen. Code, § 186.22, subds. (a) & (b); *Crawford v. Washington* (2004) 541 U.S. 36.)  He recognizes that existing law does not support his position.  (*People v. Gardeley* (1996) 14 Cal.4th 605, 619.)  But he seeks modification of existing law and notes that the California Supreme Court is considering the issue whether a defendant's Sixth Amendment right to confrontation is violated by a gang expert's reliance on testimonial hearsay.  (See *People v. Sanchez* (2014) 223 Cal.App.4th 1, review granted May 14, 2014, No. S216681.)  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cerezo is a member of the Ventura chapter of the Hells Angels motorcycle club, a criminal street gang. William Hoffman was a "prospect," or probationary member, of the Ventura chapter. In August 2010, Hoffman decided to leave the Hells Angels.

If a Hells Angels member or prospect leaves the gang, he is expected to appear at the chapter's clubhouse to subject himself to a beating and to other conditions of departure.

Hoffman told a Hells Angels member he intended to leave the gang. On August 20, Hoffman was expected at the clubhouse but did not appear. He did not respond to telephone calls and text messages that night from Hells Angels' members.

At 3:00 the next morning, Cerezo and gang members Aaron McIntosh and William Holder knocked on the door of the house where Hoffman was staying. They asked Hoffman to return to the clubhouse with them. Hoffman refused. They demanded Hoffman's motorcycle and vest. Hoffman refused to surrender the motorcycle, and they took it.

Hoffman described some of the activities of the Ventura chapter. He testified that he used violence for the Hells Angels when he was a prospect. He saw others do so at least five times. He heard members brag about beatings and drug sales they committed for the gang. He saw them take the motorcycles of every member who left. He once saw members "beat . . . up" a person they "kicked out" of the gang, and then "hog-tie" him while a tattoo artist blacked-out his Hells Angels tattoos.

The only other evidence of predicate criminal offenses by Hells Angels' members was presented by the prosecution's gang expert, Deputy Sheriff Steven Jenkins. Jenkins was also the lead investigator in the case. He testified that the Hells Angels motorcycle club is a criminal street gang that is engaged in drug trafficking and extortion. He testified that taking a motorcycle from a prospect who leaves the gang benefits the gang because it prevents an appearance of weakness, induces fear and intimidation, and deters others from thinking they can leave the gang on their own terms.

2

Prior to trial, Cerezo moved in limine to preclude Jenkins from testifying to "bad acts" to which he was not a witness. Defense counsel argued, "[W]e can't have experts parroting other people that aren't here for cross-examination." The trial court denied the motion.

Jenkins described six predicate criminal offenses by Hells Angels' members. The trial court admitted certified records of conviction for each. The defense did not object to the records. Jenkins testified that the defendants in each of these cases were members of the Hells Angels. He briefly described the facts of some of the crimes. He said he was familiar with these crimes either from being involved in the case, talking to investigators, or reading police reports. Jenkins did not convey out-of-court statements. Jenkins also testified, without reference to court records, that in 1977 a Hells Angels prospect planted an improvised explosive device in a motorcycle, killing two people, and was later convicted. Jenkins did not identify the source of this information.

Jenkins testified that his professional training and experience made him aware of Hells Angels' activities. His experience included personally investigating 15 Hells Angels' crimes; executing search warrants at the Ventura chapter's clubhouse and members' homes, where he found weapons and "instrumentalities of crime"; and "close to six" formal interviews and debriefings with current and former members of the Ventura chapter. In three or four of these formal interviews, Jenkins was the "lead person asking questions." He said these were "long interview[s]" that take "five to six hours."

Jenkins did not specifically convey the substance of the formal interviews. He answered "Yes" when asked if the interviews helped him to form his opinion that the Hells Angels gang relies on fear and intimidation. He said that Aaron McIntosh lied during his interview. Jenkins said McIntosh earned his "filthy few" Hells Angels' patch by stabbing someone in Fresno. Jenkins did not identify the source of that information. Jenkins also referred to two members who had been caught in possession of "ball-peen" hammers.

3

## DISCUSSION

Cerezo contends that the trial court violated his Sixth Amendment right to confrontation when it permitted Deputy Jenkins to testify about the circumstances of predicate crimes committed by the Hells Angels based on hearsay. We previously rejected this argument. (*People v. Ramirez* (2007) 153 Cal.App.4th 1422, 1424 [gang expert properly relied upon hearsay evidence regarding facts of predicate crimes].)

An expert witness testifying regarding criminal street gangs may base his opinion upon conversations with gang members, information gathered by other law enforcement officers, his own personal investigations, or other information. (*People v. Gardeley*, *supra*, 14 Cal.4th 605, 620.) "Hearsay in support of expert opinion is simply not the sort of testimonial hearsay the use of which [*Crawford v. Washington*, *supra*, 541 U.S. 36 and progeny] condemn[]." (*People v. Ramirez*, *supra*, 153 Cal.App.4th 1422, 1427.) Jenkins' reliance on the out-of-court interviews and information gathered by other law enforcement officers did not violate Cerezo's confrontation rights.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:



YEGAN, J.



PERREN, J.


4

Charles W. Campbell, Jr., Judge

Superior Court County of Ventura

_____


John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Timothy M. Weiner, Deputy Attorney General, for Plaintiff and Respondent.